(No. 35584.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM CHAPMAN, Plaintiff in Error.

*Opinion filed September 22, 1961.*

LOUIS F. AIELLO, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, William Chapman, was found guilty of

robbery after a trial before a judge of the criminal court of Cook County, and was sentenced to imprisonment in the penitentiary for a term of not less than two nor more than ten years. He contends that the evidence did not establish his guilt beyond a reasonable doubt, and that references to other offenses, by one of the witnesses for the prosecution, were so prejudicial as to require that the judgment be reversed.

Two witnesses were called by the prosecution. Vera Gardiner testified that on April 28, 1959, at 3:15 in the afternoon, she was walking along Laflin Street between 90th and 91st streets. As she approached the middle of the block she saw a man standing near the curb and, about 15 feet beyond, a bright red car with its motor running and a man at the wheel. When she came opposite the man on the street he snatched her purse, then jumped into the car, and the two men drove off. She noted the appearance of the car, memorized its license number, and gave the information to the police. Two days later, the police called her to the station and showed her a car which she identified as the one in which the man who had taken her purse made his escape. The license plates bore the number which she had noted at the time of the robbery.

Miss Gardiner was unable to identify the defendant positively as the man who had snatched her purse, although she testified that he was similarly dressed and about the same height and weight. She testified that police officers questioned the defendant in her presence; that he said that he didn't snatch the purse, but acknowledged that he was driving the car; that he also said that he needed money and that, at the request of another man, he "drove for him, and * * * they would work from ten to three and they might get six to eight purses a day." They took purses only from elderly women. Miss Gardiner was 71 years old.

Detective John Orbon testified that he was one of the police officers who located defendant's car and arrested

him. In describing the arrest he volunteered that the license plates had been stolen. An objection was sustained. In response to a question about the matter before the court, he volunteered the statement that he had interrogated Chapman "primarily for an assault that happened on the 29th to a Mrs. Fehlauer who had her hip broken." The defendant thereupon moved that a mistrial be declared. The judge denied the motion, and cautioned the witness about referring to other crimes.

Orbon testified that Miss Gardiner "picked out Chapman as the man who she had seen two days earlier, I mean dressed similar. She didn't identify his face. She said the clothes was very similar." He testified that defendant said that he thought that he had been in the neighborhood where Miss Gardiner was robbed, and that while he didn't remember the purse, he thought that he got $3 out of the proceeds. He also testified that the defendant said that "he had been working snatching purses from older women," and that the defendant refused to identify his associate, except to say that his name was John.

The defendant testified that he owned the car described by Miss Gardiner, and that he had found the license plates at a junk yard where he worked; that a man known to him only as Johnny had asked for a ride to "his boss-man's house" to pick up some money. When they arrived at their destination "out south," he remained in the car while Johnny got out and walked back. He said he did not look back and that they drove away when Johnny returned. In the car Johnny produced a woman's purse from under his coat, and defendant testified that this was the first he knew of the robbery. He received $3, and testified that it was for giving Johnny the ride. He denied that he had admitted that he had taken part in purse snatchings and had split the proceeds. He testified that on the day in question he and Johnny were dressed similarly and that they were about the same height and weight.

It is our opinion that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt. Miss Gardiner's testimony established that the crime with which the defendant was charged had been committed by a man of the defendant's size and weight who was dressed like the defendant and who left the scene in the defendant's car. Her testimony that the defendant acknowledged that he drove the car but said that he did not snatch the purse, coupled with the defendant's testimony that he had been driving his car on one occasion when Johnny stole a woman's purse "out south," placed him at the scene of this crime. The defendant, however, denied that he knew that Johnny planned to steal a purse, and denied also that he had admitted that he and Johnny were regularly engaged in snatching purses from elderly women.

Both Miss Gardiner and officer Orbon testified that they had heard him make that admission, and the inferences that flowed from this testimony, if believed, were sufficient to establish the defendant's guilt. Whether he participated as principal or accessory is immaterial. (Ill. Rev. Stat. 1959, chap. 38, par. 582.) There was, however, a discrepancy between the testimony of Miss Gardiner and that of the police officer. She testified that officer Orbon was not among the several police officers present when the defendant made the admissions to which she testified. Officer Orbon testified that he was there at that time. He also testified, however, that he had interrogated the defendant on another occasion when Miss Gardiner was not present.

Of course one possible explanation of this discrepancy in the testimony of the prosecution's two witnesses is that their testimony about the defendant's admissions was false. But there are other explanations at least equally plausible: for example, Miss Gardiner may have been confused as to the exact identity of the several police officers who were present, or officer Orbon may have testified to admissions made by the defendant when he was interrogated out of

the presence of Miss Gardiner. The credibility of the witnesses was for the trial judge to determine, and we can not say that he was required to find that this discrepancy meant that the testimony concerning the defendant's admissions was fabricated.

We do not find it necessary to consider whether officer Orbon's statements about other offenses were technically admissible or not, for we think that under the circumstances of this case they were not prejudicial. The case was tried before a judge rather than a jury. The statements were not elicited by the prosecutor, and the judge promptly admonished the witness to confine his testimony to matters relating to the offense which was being tried. Cf. *People* v. *Morton,* 21 Ill.2d 139.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*